

FILED
U.S. DISTRICT COURT
SAVANNAH

IN THE UNITED STATES DISTRICT COURT 2013 JUL -3 PM 1:5?
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

CLERK_____
SO. DIST. OF GA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIVIL ACTION |
| *ex rel.* | : | **C V 4 1 3   1 6 5** |
| KELLY RENEE WELLS, | : | FILE NO._____ |
| | : | |
| Plaintiffs, | : | |
| | : | **FILED UNDER SEAL** |
| v. | : | **PURSUANT TO** |
| | : | **31 U.S.C. § 3730(b)(2)** |
| BASSETT MIRROR COMPANY, INC.; | : | |
| MACY'S, INC.; | : | DO NOT PLACE IN PRESS BOX |
| THE NEIMAN MARCUS GROUP, | : | DO NOT ENTER ON PACER |
| INC.; and | : | |
| Z GALLERIE, INC., | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Kelly Renee Wells ("Relator") brings this action to recover damages and civil monetary penalties on behalf of the United States of America arising from violations of the Civil False Claims Act, 31 U.S.C. § 3729 *et seq.*, by Defendant Bassett Mirror Company, Inc. ("Bassett"), Defendant Macy's, Inc. ("Macy's"), Defendant The Neiman Marcus Group, Inc. ("Neiman Marcus"), and Defendant Z Gallerie, Inc. ("Z Gallerie") (collectively referred to as "the Defendants").

## SUMMARY OF THE FALSE CLAIMS

1. Bassett has classified wooden bedroom furniture from the People's Republic of China ("China") as non-bedroom furniture on customs forms since at least 2007 in order to avoid steep antidumping penalties.

2. Macy's, Neiman Marcus, and Z Gallerie have purchased the imported furniture in question from Basset for sale in their stores since at least 2007.

3. Macy's, Neiman Marcus, and Z Gallerie have conspired with Bassett to defraud the United States of America by agreeing to classify wooden bedroom furniture as non-bedroom furniture, avoid payment of antidumping penalties, and gain a competitive advantage over other retailers who are unwilling to join the fraudulent scheme.

4. As a result, the Defendants have evaded significant antidumping penalties for at least six years and have financially damaged retailers who have not been involved in the fraudulent scheme by flooding the market with cheap Chinese wooden bedroom furniture.

## PARTIES, JURISDICTION, AND VENUE

5. Relator brings this action on behalf of the United States of America against the Defendants for treble damages and civil penalties arising from the Defendants' false statements and false claims in violation of the Civil False Claims Act, 31 U.S.C. § 3729 *et seq*.

2

6.     Relator is a citizen of the United States and a resident of Huntsville, Alabama.

7.     Relator formed Southern Home Accents, an Alabama sole proprietorship, in 2006. In 2010, Relator dissolved Southern Home Accents and formed Glam Furniture, LLC, an Alabama corporation, which is still in operation today. Southern Home Accents and Glam Furniture, LLC (hereafter collectively referred to as "Glam Furniture") specialize in selling unique home décor and fine furniture. One type of furniture that Glam Furniture sells is wooden bedroom furniture that is laminated with mirrors (hereafter referred to as "mirrored wooden bedroom furniture").

8.     From 2007 to 2012, Glam Furniture was a major retailer of Bassett for mirrored wooden bedroom furniture and sold many of the same items as Macy's, Neiman Marcus, and Z Gallerie.

9.     As a retailer of Bassett, Relator was in a unique position to view Bassett's private marketing materials, invoices, shipping crates, and emails. More particularly, she was able to observe and collect documentation on how Bassett changed the description of imported mirrored bedroom furniture to non-bedroom descriptions on invoices, shipping forms, and its website but continued to market the furniture as bedroom furniture to its retailers. Relator also received an email from a Bassett sales representative written by a vice president of Bassett which

3

shows that Bassett was acutely aware of the severe antidumping penalties associated with wooden bedroom furniture and took steps to avoid antidumping penalties. Relator also received emails from sales representatives with attached pictures showing the mirrored bedroom furniture in bedroom displays.

10.     Bassett, originally established in 1922, is a corporation formed under the laws of the state of Virginia, with its principle office at 1290 Philpott Drive, Bassett, Virginia 24055. Among other things, Bassett imports wooden bedroom furniture through various United States ports including Savannah, Miami, Wilmington, New York, Norfolk, Long Beach, and Los Angeles. Basset then sells the furniture to various retailers, including Macy's, Neiman Marcus, and Z Gallerie.

11.     Since July 1, 2007, Bassett has imported approximately 1,000 shipments of goods into the United States through the Port of Savannah, which is located in the Southern District of Georgia. Approximately half of these shipments contained furniture and related items that were of Chinese origin. Upon information and belief, these shipments cleared customs in Savannah because Savannah was the final port of entry.

12.     Macy's is a corporation formed under the laws of the state of Delaware, with its principal office located at 7 West Seventh Street, Cincinnati,

4

Ohio 45202. Macy's operates department stores throughout the United States, including at least two department stores in the Southern District of Georgia.

13.     Macy's has been selling Bassett furniture since at least 2007 and currently sells mirrored wooden bedroom furniture from Bassett in its department stores and through its online website.

14.     Neiman Marcus (including its affiliated entities Neiman Marcus, Inc. and Horchow Mail Order, Inc.) is a corporation formed under the laws of the state of Delaware, with its principal office located at 1201 Elm St., Suite 2900, Dallas, Texas 75270. Neiman Marcus operates department stores throughout the United States. Neiman Marcus also operates at least two online websites that advertise and sell to customers across the United States including customers in the Southern District of Georgia.

15.     Neiman Marcus sells mirrored wooden bedroom furniture in its department stores and through its online websites. Neiman Marcus purchases much of this furniture from Bassett and has been doing so since at least 2007

16.     Z Gallerie is a corporation formed under the laws of the state of California, with its principle office located at 1855 W. 139TH Street, Gardena, California 90249. Z Gallerie operates department stores throughout the United States. Z Gallerie also operates an online website that advertises and sells to

5

customers across the United States including customers in the Southern District of Georgia.

17.     Z Gallerie sells mirrored bedroom furniture in its department stores and through its online website. Z Gallerie purchases much of this furniture from Bassett and has been doing so since at least 2007.

18.     This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq.* This Court has original federal question jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1345, and 31 U.S.C. § 3730(b).

19.     The Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) which provides that, "[a]ny action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." At all times relevant to this action, the Defendants have transacted business in the Southern District of Georgia. Additionally, the Defendants have committed numerous False Claims Act violations in this federal judicial district as described in this Complaint.

20.     Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) because, at all times relevant to this action, the Defendants have transacted business in the Southern District of Georgia. Additionally, the Defendants have

committed numerous False Claims Act violations in this federal judicial district as described in this Complaint. Venue is also proper pursuant to 28 U.S.C. § 1391(c).

21. This action is not based upon the public disclosure of allegations or transactions in the defined categories of hearings, reports, and news media identified in 31 U.S.C. § 3730(e)(4)(A). If there has been a public disclosure of any of the allegations underlying this action, Relator qualifies as the "original source" of information pursuant to 31 U.S.C. § 3730(e)(4)(B).

## FACTS

### Customs Laws and Forms

22. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

23. The United States of America (hereafter referred to as the "United States" or "U.S."), through the Bureau of Customs and Border Protection ("CBP"), a division of the U.S. Department of Homeland Security, collects duties and penalties on the importation of goods into the United States pursuant to the Tariff Act of 1930, 19 U.S.C. § 1202 *et seq*.

24. The U.S. International Trade Commission (hereafter referred to as the "USITC") and the U.S. Department of Commerce (hereafter referred to as the "Department of Commerce") are responsible for conducting antidumping and countervailing duty investigations.

7

25.     The Tariff Act of 1930 allows for industries in the United States to petition the USITC and the Department of Commerce for relief from imported goods sold in the United States at less than fair value (a practice known as "dumping") or that benefit from countervailing subsidies provided by foreign governments.

26.     If it is determined that dumping is occurring and that an industry in the United States is being materially injured or threatened by the dumping, the Department of Commerce may issue an antidumping duty order to offset the dumping.

27.     On January 4, 2005, the U.S. Department of Commerce published in the Federal Register (70 FR 329) an antidumping duty order on all wooden bedroom furniture imported into the United States from China.

28.     According to the Department of Commerce's order, antidumping penalties on wooden bedroom furniture from China ranged anywhere from 0.83% to 198.08% depending on the manufacturer.  Since 2005, the schedule has been amended multiple times to provide for differing penalties depending on the manufacturer.

29.     If a Chinese manufacturer is not specifically listed by the Department of Commerce in the order, the manufacturer falls under a general category referred

to as "PRC-Wide". In 2005, the PRC-Wide rate carried an antidumping penalty of 198.08%. This rate was eventually increased to 216.01%.

30. The Department of Commerce's order defines wooden bedroom furniture as the following: *"Wooden bedroom furniture is generally, but not exclusively, designed, manufactured, and offered for sale in coordinated groups, or bedrooms, in which all of the individual pieces are of approximately the same style and approximately the same material and/or finish. The subject merchandise is made substantially of wood products, including both solid wood and also engineered wood products made from wood particles, fibers, or other wooden materials such as plywood, oriented strand board, particle board, and fiberboard, with or without wood veneers, wood overlays, or laminates, with or without non-wood components or trim such as metal, marble, leather, glass, plastic, or other resins, and whether or not assembled, completed, or finished."*

31. The Department of Commerce's order then gives numerous examples of what constitutes wooden bedroom furniture including, but not limited to, the following: *"night tables, night stands, dressers, commodes, bureaus, mule chests, gentleman's chests, wardrobes, vanities...chests of drawers, narrow chest of drawers, armoires"* and *"other bedroom furniture consistent with the above list."*

32. The Harmonized Tariff Schedule of the United States (hereafter referred to as "the HTS") is the principal resource used for determining tariff

9

classifications for imported goods into the United States. The HTS is published and maintained by the USITC.

33.     There are over 17,000 unique ten-digit HTS classification codes. Each unique code informs CBP of the correct duty or penalty for any given imported good.

34.     CBP is solely authorized to interpret the HTS, issue legally binding rulings or advice on tariff classifications, to administer customs laws, and to collect all duties and penalties on behalf of the United States.

35.     When a company in the United States imports goods from a foreign country, it must submit a Form 7501 to CBP. This form is generally sent electronically.

36.     Among other things, a completed Form 7501 details the importer of record, country of origin, U.S. Port of lading, the consignee, a description of the merchandise, quantity of units, and the total value of the goods.

37.     Under the description of the goods, the importer is required to fill in a box labeled "HTSUS" which is where the importer enters the HTS classification code. The importer is also required to provide a description of the goods on other entry documentation.

38.     If the incorrect HTS classification code is entered on the Form 7501 or if a false description is used on entry documentation and submitted to CBP, the

10

importing party may evade the required duty or penalty on the goods being imported.

39.     In 1993, Congress passed the Customs Modernization Act to amend the Tariff Act of 1930.

40.     Prior to enactment of the Customs Modernization Act, an importer was required to describe the merchandise and relay the cost to CBP. It was CBP's responsibility to classify the goods and determine their value (appraise the goods to allow the correct duty to be applied).

41.     As a result of the enactment of the Customs Modernization Act, it is now the responsibility of the importer of record to use "reasonable care" to "enter", "classify", and "value" the goods and to provide any other information necessary to enable CBP to assess the correct duties, collect accurate statistics, and determine whether all other applicable requirement are met. 19 U.S.C.A. § 1484.

42.     Thus, the importer of record is ultimately responsible and liable for the correctness of the entry documentation presented to CBP and all applicable duties, taxes, fees, and penalties. *See also*, <u>United States v. Optrex America, Inc.</u>, 32 C.I.T. 620 (2008), finding "it is well settled that the *importer* bears responsibility for classification of its merchandise."

11

43.     Under the Customs Modernization Act, importers are expected to be compliant with customs regulations by seeking guidance though various channels both before and after the entry of goods.

44.     19 U.S.C.A. § 1592(c) establishes civil penalties for introducing goods into the United States by means of any material and false statement.  The severity of the penalty depends on whether the violation was committed with fraud, gross negligence, or negligence.  For instance, a fraudulent violation is punishable by a civil penalty in an amount not to exceed the lesser of the domestic value of the merchandise or four times the lawful duties, taxes, and fees.

45.     19 U.S.C.A. § 1592(d) further provides: "…if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a) of this section, the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed."

46.     Falsely classifying goods on entry documentation is also a crime.  18 U.S.C.A. § 542 provides whoever "introduces…into the commerce of the United States any imported merchandise… by means of any false statement in any declaration without reasonable cause to believe the truth of such statement…[s]hall be fined for each offense under this title or imprisoned not more than two years, or both." 18 U.S.C.A. § 541 also provides: "Whoever knowingly effects any entry of goods, wares, or merchandise, at less than the true weight or measure thereof, or

12

upon a false classification as to quality or value, or by the payment of less than the amount of duty legally due, shall be fined under this title or imprisoned not more than two years, or both."

47.    An individual who falsifies a Form 7501 may also be guilty of wire fraud under 18 U.S.C. § 1343 which carries a possible sentence of twenty years. An individual who knowingly makes a false classification may also be guilty of making a false statement under 18 U.S.C. § 1001 which carries up to five years in prison.

48.    Wooden bedroom furniture from China has a HTS classification code beginning with 9403.50.  Non-wooden bedroom furniture from China has a HTS classification code beginning with 9403.60.

### The Scheme to Defraud the United States

49.    The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

50.    Bassett has been importing mirrored wooden bedroom furniture from various Chinese manufacturers since at least July 1, 2007 and continues to do so to the present day.

51.    There are approximately 17 distinct bedroom collections of mirrored bedroom furniture consisting of more than 70 different pieces of furniture that Bassett has imported during this timeframe (collectively referred to as "the Bassett

13

Furniture") (*See*, Exhibit 1, a list of each collection and individual pieces of furniture imported).

52.     From July 1, 2007 to present day, Bassett has primarily imported the Bassett Furniture from six Chinese manufacturers: Zhong Shun Wood Art Company, Chun Wood Furnishings, Hang Hai Woodcraft's Art Factory, Ding Hui Furniture Factory, Fujian Tourist Trading Company, and Shengda Furniture Manufacturer Company.

53.     Five of these manufacturers fall under the PRC-Wide rate meaning that an antidumping penalty of 216.01% is attached to their goods.  Only Hang Hai Woodcraft's Art Factory had a lesser antidumping penalty -- ranging from 6.65% in 2005 to 6.68% today.

54.     The Bassett Furniture is clearly wooden bedroom furniture for purposes of the Department of Commerce's January 4, 2005 order and therefore subject to antidumping penalties.

55.     Upon information and belief, Bassett has never sought any guidance or requested a determination from CBP on how the Bassett Furniture should be classified.

56.     On each shipment of the Bassett Furniture into the United States since July 1, 2007, Bassett knowingly submitted or caused to be submitted a Form 7501 and/or other entry documentation indicating that the Bassett Furniture was not

14

wooden bedroom furniture. By doing so, Bassett was able to avoid antidumping penalties.

57.     After importing the Bassett Furniture, Bassett would sell the Bassett Furniture to various retailers around the country including Macy's, Neiman Marcus, and Z Gallerie (hereafter collectively referred to as "the Retailers"). The Bassett Furniture was sold to the Retailers at a reduced rate as a result of the avoidance of the antidumping penalties.

58.     Bassett originally referred to the Bassett Furniture by their common bedroom names such as a "nightstand", "dresser", "vanity", and "armoire" and marketed the Bassett Furniture as such on its publicly available website and to the Retailors (*See*, "Exhibit 2-A", an image of the inventory on bassettmirror.com from July 2007). A picture taken by Bassett and distributed to retailers in 2007 also shows a collection of the Furniture (the Borghese collection) in a bedroom setting (*See*, "Exhibit 2-B"). This picture was emailed to Relator by a Bassett sales representative in 2007.

59.     Over time, however, Bassett began using false descriptions for the Bassett Furniture to give the appearance that the Bassett Furniture was non-bedroom furniture (*See*, "Exhibit 3", an image of the inventory on bassettmirror.com from June 2013).

15

60.    For example, Bassett's internal identifying number for a bedroom dresser is 910.  Bassett originally described items labeled as 910 on shipping cartons *"DRESSER"* (*See*, "Exhibit 4-A").  Bassett, however, later changed this description on cartons to *"MIRRORED DRAWER CONSOLE"* (*See*, "Exhibit 4-B").  Other than the name change, these items are exactly the same.

61.    As another example, Bassett's internal identifying number for nightstands is 990.  Bassett originally described items labeled as 990 on shipping cartons as *"NIGHT STAND"* (*See*, "Exhibit 5-A")  Bassett, however, later changed this description on cartons and invoices to *"MIRRORED MAGAZINE CHAIRSIDE CHEST"* (*See*, "Exhibit 5-B").  Other than the name change, these items are exactly the same.

62.    The change in names can also be seen on Bassett invoices.  For example, Bassett called the Chelsea dresser (Item Number T1230-910) a *"6 DRAWER DRESSER"* in January of 2010 on its invoices (*See*, "Exhibit 6-A")  By January of 2012, however, Bassett had changed the name to *"MIRRORED HALL GRAND CONSOLE"* (*See*, "Exhibit 6-B").  Other than the name change, these items are exactly the same.

63.    Despite changing the description of the Bassett Furniture, Bassett continued to market the Bassett Furniture as bedroom furniture.  Indeed, at trade

shows and in marketing materials provided to retailers, Bassett would place the Bassett Furniture in bedroom settings.

64.     For instance, Relator received an email in 2011 from a Bassett sales representative. Attached to the email was a photograph of the Bassett Furniture in bedroom settings. In fact, the photograph shows the entire Chelsea collection of furniture in a bedroom (*See*, "Exhibit 7").

65.     In 2012, Bassett displayed the Bassett Furniture at a trade show in High Point, North Carolina. Pictures taken at the trade show depict the Chelsea nightstand (Item No. T1230-990) (*See*, "Exhibit 8-A") and the Borghese dresser (Item No. 8311-911) (*See*, "Exhibit 8-B") in bedroom settings.

66.     Bassett also utilizes a private website called furnishweb.com that is used by its retailers. Furnishweb.com is password protected and only Bassett retailers can obtain a password and user ID. The website displays the Bassett Furniture sold by Bassett and tracks the sales of its retailers.

67.     A review of Bassett's inventory on furnishweb.com reveals that Bassett has intentionally changed and misidentified every piece of the Basset Furniture as non-bedroom furniture.

68.     As further evidence that the descriptions used by Bassett on customs documents were intentionally misleading, current advertising material by Bassett's

17

retailers show that the Bassett Furniture is being marketed to the public as bedroom furniture.

69.     On Bassett's website, if a customer clicks on the "Buy Online" button, it takes the customer to a website run by Home Gallery Stores.

70.     Home Gallery Stores advertises and sells many pieces of the Bassett Furniture as bedroom furniture.

71.     For instance, Home Gallery Stores advertises a nightstand called the "*Chelsea Mirrored Nightstand*" (Item No. T-1230-990) and shows a picture of the nightstand next to a bed (*See*, "Exhibit 9"). On Bassett's public website, however, the same nightstand is called a "*Chelsea Magazine Chest*" (Item No. T1230-990) (*See*, "Exhibit 3").

72.     Other smaller online retailers also market the Bassett Furniture as bedroom furniture.

73.     Homefurnitureshowroom.com (a Lowe's company), a Bassett retailer, sells the "*Bassett Mirror 8311-990 Borghese Hall Chest Nightstand*" (*See*, Exhibit 10). On bassettmirror.com, Bassett calls the nightstand a "*Borghese Magazine Chest*" (Item No. 8311-990) (*See*, "Exhibit 3").

74.     ivgStores, a Bassett retailer, advertises a dresser as a "*Bassett Mirror – 6 Drawer Chelsea Mirror Dresser*" on its website and places the dresser under the bedroom furniture section (*See*, "Exhibit 11"). On bassettmirror.com, Bassett

18

calls the same dresser a "*Chelsea Six Drawer Console*" (Item No. T1230-910)
(*See*, "Exhibit 3").

75. Chintz & Company, a Bassett retailer, advertises a dresser as a
"*Borghese Dresser*" on its website and places the dresser under the bedroom
furniture section (*See*, "Exhibit 12"). On bassettmirror.com, Bassett calls the
dresser a "*Borghese Mirrored Chest*" (Item No. 8311-9121) (*See*, "Exhibit 3").

76. Bassett was well aware of the significance of how furniture is
classified on customs forms and that classifying furniture as bedroom furniture
could trigger severe antidumping penalties.

77. In a February 9, 2012 email to approximately 40 Bassett sales
representatives, Bassett Vice President Bill Frazier expressed Bassett's concern
over how a piece of furniture was being described. CEO of Bassett, Spencer
Morten III, was also copied on the email (*See*, "Exhibit 13", a copy of the email).
The email from Mr. Frazier was emailed to Relator by a Bassett sales
representative.

78. This email not only demonstrates Bassett's knowledge of the relevant
antidumping penalties, but it also demonstrates that Bassett was taking measures to
ensure that CBP would not flag any imports as wooden bedroom furniture.

19

## The Retailers

79.     The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

80.     The Retailers purchased large quantities of the Bassett Furniture from Bassett between at least July 1, 2007 and the present day.

81.     The Retailers knew that the Bassett Furniture was bedroom furniture for purposes of customs because of the way the Retailers market the Bassett Furniture to the public.  The Retailers also knew that Bassett was importing the Bassett Furniture under the false pretense that it was non-bedroom furniture.

82.     Macy's, for example, sells a collection of bedroom furniture it calls the "*Marais Bedroom Furniture Sets & Pieces, Mirrored*" and features the collection in a bedroom setting (*See*, "Exhibit 14").  This collection of furniture features a nightstand called the "*Marais Chest, Mirrored Small Chest*", a dresser called a "*Marais Chest, 7 Drawer Mirrored Chest*", and a smaller dresser called the "*Marais Chest, 3 Drawer Mirrored Chest.*"  On bassettmirror.com, Bassett calls the nightstand a "*Borghese Magazine Chest*" (*See*, "Exhibit 3"); the dresser a "*Borghese Drawer Console*" (Item No. 8311-911) (*See*, "Exhibit 3"); and the small dresser a "*Borghese Hall Chest*" (Item No. 8311-766) (*See*, "Exhibit 3").

83.     Neiman Marcus has a "*Bedroom*" section on Horchow's website.  Under the bedroom section, Neiman Marcus advertises a subsection for "*Bedside*

20

*Tables & Dressers*" (*See*, "Exhibit 15") and features a picture of what

bassettmirror.com calls a "*Murano Chest*" (Item No. T2624-203) (*See*, "Exhibit

3").

84.     Under the "*Bedroom Mirrored Furniture*" section of Horchow's

website, Neiman Marcus sells numerous pieces of the Bassett Furniture (*See*,

"Exhibit 16") including, but not limited to, what bassettmirror.com calls the

"*Murano Commode*" (Item No. T2624-990), the "*Murano Chest*" (Item No.

T2624-203), the "*Borghese Jewelry Armoire*" (Item No. 8311-227), the "*Collette

Chairside Chest*" (Item No. T1267-990), the "*Collette Jewelry Armoire*" (Item No.

T1267-927), the "*Borghese Magazine Chest*" (Item No. 8311-990), the "*Borghese

Media Cabinet*" (Item No. 8311-567), and the "*Borghese Commode*" (Item No.

8311-225) (*See*, "Exhibit 3").

85.     For instance, Neiman Marcus advertises a nightstand that it calls a

"*Shilo Mirrored Chest*" under the "*Bedroom Mirrored Furniture*" section of

Horchow's website (*See*, "Exhibit 17"). Bassettmirror.com calls the same

nightstand a "*Murano Commode*" (Item No. T2624-990) (*See*, "Exhibit 3").

86.     Neiman Marcus also sells the "*Amelie Mirrored Nightstand*" and

gives the following description: "*A mirrored nightstand adds a bit of glamour to

the bedroom*" (*See*, "Exhibit 18"). It should be noted that the Amelie collection is

21

exclusive to Neiman Marcus. Bassett calls the same nightstand a "*Borghese Magazine Chest*" (Item No. 8311-990) (*See*, "Exhibit 3") on bassettmirror.com.

87.     Neiman Marcus sells the "*Clairmonte Mirrored Nightstand*" on its website and gives the following description: "*Add a little – or a lot – of shine to the bedroom with this mirrored nightstand*" (*See*, "Exhibit 19-A"). Neiman Marcus sells the "*Clairmonte Mirrored Dresser*" on its website as well and gives almost the same description (*See*, "Exhibit 19-B"). The Clairmonte collection is exclusive to Neiman Marcus, so these two items are not found on Bassett's website. The Clairmonte, however, is virtually identical to the Chelsea collection. These two items are advertised and identified on bassettmirror.com as the "*Chelsea Six Drawer Console*" (Item No. T1230-910) and the "*Chelsea Magazine Chest*" (Item No. T1230-990) (*See*, "Exhibit 3").

88.     Z Gallerie sells many of the same types of the wooden bedroom furniture in its mirrored furniture section (*See*, "Exhibit 20-A"). Z Gallerie also sells some of these items under the "*Chests & Dressers*" section of its bedroom furniture page (*See*, "Exhibit 20-B").

89.     In the chests and dressers section of Z Gallerie's website, Z Gallerie sells several pieces of wooden bedroom furniture that are not laminated with mirrors, but that it purchased from Bassett and are a part of the Bassett Furniture. For instance, Z Gallerie sells the "*Palais 6 Drawer Dresser*" (See, "Exhibit 20-B").

In its advertising materials, Bassett calls the dresser a "*Palazzina Grand Chest*" (Item No. T2815-910) (See, "Exhibit 21").

90.    Z Gallerie also sells what it calls a "*Palais 2 Drawer Nightstand*" (*See*, "Exhibit 22-A"). Bassett calls this nightstand a "*Palazzina Night Chest*" (Item No. T2815-990) (*See*, "Exhibit 22-B") in its advertising materials.

91.    As major retailers that deal heavily in imported wooden furniture, the Retailers knew that the Bassett Furniture was of Chinese origin and had at least constructive knowledge of the shipping records indicating that the Bassett Furniture came from China. Moreover, all of the cartons that the Bassett Furniture was shipped in were clearly labeled "*Built in China*" (*See*, "Exhibit 4-A" – "Exhibit 5-B").

92.    The Retailers knew that the Bassett Furniture was subject to antidumping penalties and that Bassett was not paying the antidumping penalties. The Retailers were also aware that the failure to pay antidumping penalties allowed the Retailers to purchase the Bassett Furniture at substantially lower prices.

23

## COUNT I:
## VIOLATION OF THE CIVIL FALSE CLAIMS ACT
## AS TO BASSETT (31 U.S.C. § 3729(a)(1)(G))

93.     The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

94.     Relator, as the original source of information regarding Bassett's violations of the False Claims Act, has direct and independent knowledge of the information on which the allegations herein are based.

95.     Bassett imported thousands of pieces of the Bassett Furniture into the United States from July 1, 2007 to present day.

96.     Bassett had an obligation to pay the antidumping penalties to the United States on each piece of the Bassett Furniture that it imported.

97.     Bassett avoided its obligation to pay the antidumping penalties on the Bassett Furniture that it imported by making or causing to be made a material false record or statement to CBP.

98.     Bassett knowingly and improperly made the material false record or statement as Bassett had actual knowledge of the false information, acted in deliberate ignorance the truth or falsity of the information, or acted in reckless disregard of the truth or falsity of the information.

99.     Specifically, on the Form 7501 and on other entry documentation for shipments of the Bassett Furniture, Bassett knowingly and improperly entered the

24

HTS classification code, and/or described the shipment, as non-bedroom furniture when it knew that the Bassett Furniture was in fact wooden bedroom furniture.

100. Bassett falsely classified the Bassett Furniture for the purpose of importing goods into the United States penalty-free.

101. As a consequence, Bassett, with knowledge, falsely represented to the CBP that no penalties should be assessed on the importation of the Bassett Furniture and successfully avoided having to pay the antidumping penalties.

102. Bassett has coordinated the importing of the Bassett Furniture and falsely classified and/or described the Bassett furniture by shipping the furniture into a variety of United States ports including but not limited to Savannah, Wilmington, Norfolk, Miami, New York, Long Beach, and Los Angeles.

103. Attached are spreadsheets of examples of shipments into ports in Savannah, Wilmington, Norfolk, Long Beach, and Los Angeles. (*See*, "Exhibit 23" – "Exhibit 27").

104. For each of the shipments shown on the spreadsheets, Bassett imported pieces of the Bassett Furniture, among other goods, and knowingly and improperly classified and/or described the Bassett Furniture as something other than bedroom furniture thereby avoiding antidumping penalties.

105. For example, Row 2 of Exhibit 23 shows that on June 9, 2013 Bassett imported 96 units of *"Amelie 2 Door Mirrored Chest Amelie Hall Chest Amelie*

25

*Small Mirrored Chest Dressden Mirrored Chest*" from Zhong Shun Wood Art Co. in China through the Port of Savannah. These pieces of furniture were classified as "*9403. 60*" for wooden non-bedroom furniture.

106.    Each of these 96 units of furniture was wooden bedroom furniture that carried with it an antidumping penalty of 216.01%. By knowingly and improperly classifying the shipment as "*9403 . 60*" and describing the shipment as non-bedroom furniture on the Form 7501 and other entry documentation, Bassett was able to avoid paying the 216.01% penalty

107.    As another example, Row 2 of Exhibit 24 shows that on March 25, 2013 Bassett imported 46 units of "*6 Drawer Chest; 5 Drawer Chest; 2 Drawer Chest*" from Zhong Shun Wood Art Co. in China through the Port of Wilmington.

108.    Each of these 46 units of furniture was wooden bedroom furniture that carried with it an antidumping penalty of 216.01%. By knowingly and improperly classifying and describing the shipment as non-bedroom furniture on the Form 7501 and other entry documentation, Bassett was able to avoid paying the 216.01% penalty.

109.    As a result, Bassett avoided the antidumping penalties on these shipments of goods into the United States.

110.    Bassett's course of conduct therefore violated the False Claims Act, 31 U.S.C. § 3729, *et seq.*

26

## COUNT II:
## CONSPIRACY TO VIOLATE THE CIVIL FALSE CLAIMS ACT
## AS TO BASSETT, MACY'S, NEIMAN MARCUS, AND Z GALLERIE
## (31 U.S.C. § 3729(a)(1)(C))

111.   The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

112.   The Defendants acted, and continue to act, in concert to violate the False Claims Act by knowingly making, using, or causing to be made or used, a false record or statement material to their obligation to pay money to the United States by falsely classifying and describing that the Bassett Furniture was non-bedroom furniture on each Form 7501 and other entry documentation that is submitted to CBP.

113.   The Defendants also acted, and continue to act, in concert to violate the False Claims Act by knowingly concealing or knowingly and improperly avoiding or decreasing their obligation to pay or transmit money to the United States of American by failing to properly disclose that the Bassett Furniture is wooden bedroom furniture for purposes of antidumping penalties.

114.   The Defendants committed and continue to commit overt acts described above in furtherance of the conspiracy, including but not limiting to stating the false HTS classification and description for the Bassett Furniture on required customs forms, purchasing the Bassett Furniture from Bassett with knowledge that the antidumping penalties had not been paid, and selling the

27

Bassett Furniture to the public and accruing greater profits due to their ability to avoid the required antidumping penalties.

115. As set forth in the preceding paragraphs, the Defendants have knowingly violated 31 U.S.C. § 3729 *et seq.* and have thereby damaged the United States by its actions in an amount to be determined at trial.

## PRAYER FOR RELIEF

Relator, on behalf of herself and the United States, pray that judgment be entered against the Defendants and that forms of relief required by law and justice be awarded including:

1.   An award of treble damages, civil penalties, attorneys' fees, litigation expenses, and costs, with interest, against the Defendants, jointly and severally, in accordance with 31 U.S.C. § 3729 *et seq.* for the Defendants' violations of 31 U.S.C. § 3729(a)(1)(G) and (a)(1)(C) (and/or the preceding version of such statutory section);

2.   An award to Relator in the event that the United States continues to proceed with this action, of an amount for bringing this action in the amount of at least 15 percent of the proceeds of the action or settlement of the claims;

28

3.   An award to Relator in the event that the United States does not

proceed with this action, in the amount of at least 25 percent of the

proceeds of the action or settlement of the claims;

4.   Trial by jury;

5.   Relief to the United States and Relator both at law and equity, to

which they may reasonably appear entitled.

This 3rd day of July, 2013.

THE PATE LAW FIRM, LLC

Page A. Pate
Georgia Bar No. 565899
101 Marietta Street, Suite 3300
Atlanta, Georgia 30303
(404) 223-3310

29

## CERTIFICATE OF SERVICE

I hereby certify that this Complaint (filed under seal pursuant to 31 U.S.C. § 3730(b)(2) ) has been served via certified mail, return receipt requested, sufficient postage prepaid, addressed as follows:

Civil-Process Clerk
United States Attorney's Office
22 Barnard Street
Suite 300
Savannah, Georgia 31401

Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Patrick Henry Building
Washington, DC 20530

This 3rd day of July, 2013.

THE PATE LAW FIRM, LLC

Page A. Pate
Georgia Bar No. 565899
101 Marietta Street, Suite 3300
Atlanta, Georgia 30303
(404) 223-3310